Is it the custom in India to refer to these people by the Purgat name, for example, rather than Singh? Well, as far as distinguishing people from one another, I think that would be probably the most practical thing to do. But I can't speak directly to the custom. At any rate, Your Honor, good morning. I'm Vinay Chai for Purgat Singh. I think the core issue in this case is the agency's credibility determination. The IJ based her credibility determination on a number of factors. The board on review explicitly declined to endorse a lot of those factors, but then finally ultimately decided that, quote-unquote, most of the defects in my client's testimony were significant and thus supported the adverse credibility finding. The board didn't elaborate on what specific inconsistencies, which inconsistencies the IJ cited amounted to the most and therefore sufficient. I was very confused about the testimony about the wife or who was a wife and who wasn't a wife. Is this relevant to what we're doing here? I don't believe so, Your Honor, because the board explicitly criticized, declined to endorse the IJ's decision to the extent that she wanted to base her adverse credibility determination on my client's marital history. So I do not think that that's a factor, and I don't think that the government has raised that as an issue in its brief. Was there an order, a decision or a judgment disallowing her petition for his adjustment? Basically what had happened was that more or less the Respondent is presently married with three United States citizens, or the petitioner. I'm used to representing people in immigration court. The petitioner is presently married with three United States citizen children, and his current spouse petitioned for him. And that petition was denied not because that marriage was found not to be in good faith, but because his prior marriage was found not to be in good faith. At any rate, the IJ cited three, apart from the things that the board knocked down, the IJ had three bases for finding my client incredible. The first one was that he had allegedly in his written declaration referred to two Sikh leaders as presidents of the All India Sikh Students' Federation, but in his subsequent testimony only referred to them as members. The IJ is simply incorrect in their reading of my client's declaration. He referred to one of those leaders, Jasbir Singh Guman, as later president of the AISSF, and the other, Balwinder Singh Khodjipur, as the general secretary. And so the inconsistency that she perceived on that issue simply didn't exist. The second ground, the second inconsistency that she perceived was that although my client had testified in 2002 that he had participated on a village level in – sorry, he testified in 2002 that he had participated in election boycott-related activities in 1992, he allegedly failed to mention any of that in his prior testimony or in his written declaration. I think, though, that an examination of his prior testimony reveals that he did, in fact, discuss his participation in the 1992 boycott. So that testimony is a little bit garbled because I think of some mistranscription, but I think the only plausible way to read the transcript is that he did, in fact, mention those – he did, in fact, mention that activity in his prior testimony. The government says that, well, he didn't mention his declaration, so even if he mentioned it in his testimony, that's an inconsistency. And they argue that it's material because it's sort of a gap filler. Like, it causes – it provides a causal link for his first arrest in February of 1993. But I think if you look at his testimony, there was really no causal link that needed to be established because his testimony had been that in January of 1993 he had attended a political rally and that a few days after that the police came to his home and castigated him for partaking in that rally. And he speculated and believed that subsequent to that January 1993 encounter, the police had him under surveillance. And that he was then arrested in February after – when two of his college classmates were at his home. That was the motivating – I think his January 1993 participation in subsequent surveillance were what led to his arrest and not something from a year before. So I don't think there was – I don't think there was a causal link missing. I don't think there was a gap to be filled. And I don't think he was – I certainly don't think he was suggesting that there was a gap to be filled. What do we make of the investigation in India as to the authenticity of the letter, particular letter? And the report came back that although the subject is my son, he was arrested by the police, he was never associated with any political militant or student organization. He attended public meetings, but the family members were not harassed. And the other letter that the individual didn't know what was in the letter because he didn't speak English. Well, Your Honor, I think the first – the first portion of what you just cited is probably the more significant issue. And I think what you're reading from is actually the officer's sort of typewritten – It's a report of the individual. It's a paraphrasing of what my client's father allegedly told him. But I think if you actually look at the – what appear to be contemporary in his handwritten notes, I think they're at pages 398 and 399 of the record, just a little bit after that. As far as never associated with political groups, that's – the father had qualified that statement by saying but never – I think basically not a member, but he had participated in Akali Dal rallies. As to the – the other thing that I think – there are a couple of things that are important to observe about that statement. First is that the statement is dated January 13th of 2001, which is several years after any of the incidents in question occurred. And another thing to note about it is that the father apparently has a very poor memory. He got his daughter-in-law's name wrong. That's my client's wife's name wrong. He got her year of birth wrong. He was off on the date of their marriage by two and a half years. He's under the impression that his son left India for the United States in 1993. My client's testimony was – and the service documentation pretty much corroborates – that he entered the United States on February 12th, 1994, at Newark International Airport. And his testimony, which the government didn't seriously dispute at hearing, was that he left India on the 10th or 11th of February, had one stopover in a country he didn't remember, and then changed flights from there to a flight that took him straight to Newark. So I think he's very likely to be off on the year of his son's departure for the United States. In fact, I would say that practically every event that the immigration officer asked my client's father about that has a year that can be verified more or less from the record, he got the year wrong. So I don't think this – I don't think any inconsistency in his alleged statements to the officer created a situation in which an adjudicator shouldn't know whom to believe. You can't believe him. My client's testimony was consistent throughout on the dates. And – The letter from the – what is a sarpanch? Is he kind of a – A village head. A village – A village head man. Uh-huh. That was – that letter, I guess, was the subject of conflicting translations. The service translation seemed to indicate that he didn't – that he didn't – he didn't know – he didn't really know what the contents of the document were and that he just signed it in good faith. But there were two translations – there were two subsequent translations at hearing, one by his counsel at the time and another by the neutral court interpreter. And both of those indicated that although he doesn't – he doesn't read or write, he – it was signed after being read. He signed it after it was read to him. So I think to the extent that they're saying that that document was – the government was trying to argue that that document was fraudulent because he didn't know what he was signing, I think that the two translations – the two subsequent translations undercut that significantly. If I could reserve my last 40 seconds or so for rebuttal. Thank you. May it please the Court again. John Uchai on behalf of the United States Attorney General. Your Honor, substantial evidence supports the agency's finding that Mr. Singh did not credibly make out a claim for asylum and withholding a removal in this case. This Court in Wang v. INS stated the following. So long as one of the identified grounds is supported by substantial evidence and goes to the heart of the claim, this Court is bound to accept an IJ's adverse credibility finding. And as to that, Your Honor, I'll point first to the conflict between the affidavit of Mr. Singh's father and Mr. Singh's – and the affidavit I'm referring to is the one that is the INS sworn statement which he signed. What's the record citation for that? That would be 397 to 399 of the record, Your Honor. Significantly, in that sworn statement, Mr. Singh's father states that his son was arrested four or five times between the years of 2000 and 2002. Respondent's testimony – I'm sorry, Mr. Singh's testimony was that he was arrested, of course, in 2003, not between 2000 and 2002. Now, this was provided to Mr. Singh prior to his final hearing, and he had five months to clarify that and get – The testimony of the father was that it was 1990 and 1992. I'm sorry, Your Honor. I think I jumped ahead 10 years. You're correct. That would be 90 to 92 as opposed to 1993. Thank you for correcting me. So you're saying that Mr. Singh, the Petitioner, was provided a copy of his father's before Mr. Singh testified that the first time he was arrested was in 1993? No, Your Honor. Actually, there were several hearings in this case. I think there were eight total, and it spanned several years. Mr. Singh had already testified to being arrested in 1993, and then this INS investigation was conducted in the middle of the proceedings, if you will, or three-quarters of the way through, and the results were made available to Mr. Singh. And as a result of him receiving this report, Mr. Singh got further evidence from the Sarpanch, which was the other translation or the other statement from the Sarpanch as to what he actually said, but didn't seek to clarify what his father said. So what we have in the record is an affidavit, a sworn statement from his father, which conflicts with his own story of his three arrests in 1993. And this is clear in the record, and it's because of its existence, because of the fact that it hasn't been rebutted. And it does go to the heart of its claim, of course, as to whether. . . Well, we have the father and we have the son. I guess the father was testifying or making the statement, what, 10 years later? I'm not exactly sure as to the date of the report, but it was years after. That's correct, Your Honor. Uh-huh. So it's who do we believe? Well, Your Honor. . . Or is it significant? Does it matter? Well, it does matter, Your Honor, but I'd also like to point out that his father was the individual that went and had some of the other affidavits created as well, such as the one for the doctor. If you recall in the record, it states that, or Mr. Singh stated that his father went to the doctor and reminded him of the doctor's, of his son's treatment at the hands of the doctor. So whether or not the clarity of the father's memory is a question, of course, it behooves Mr. Singh to state that his father's memory is incorrect and mine is correct because it supports his claim. But the point being, Your Honor, that this is a major inconsistency in the record. Isn't there another major inconsistency which you haven't commented on? The father is asked at page 398, has anyone from this village ever suffered in any capacity physically and or mentally by government officials and or police at any time? That was done in 2002. And his answer is no. His son says he was beaten by the police in February of 1993 and the fields were burned in June 1993. Isn't that a glaring inconsistency? Absolutely, Your Honor. Yes. And the fact that, again, there was no, I guess, rehabilitation of that statement or an attempt to rehabilitate that statement is a glaring hole in Mr. Singh's testimony or the overall claim that he has here. Was he asked about that inconsistency? Your Honor, frankly, I don't recall if it was brought up directly or not. I know that the immigration judge referred to it in page 72 of the record. My question is, during the hearing, did the government attorney or the immigration judge ask the petitioner about the inconsistency that Judge Bea just referred to? Your Honor, I don't know the answer to that. I don't recall if that was asked or not. And I apologize to the court for not being better prepared to answer that. I do not know. Let's assume that the petitioner was not asked about that. I'm, by the way, in the same position you are. I don't know the definite answer to that. But let's assume for the purpose of the question I'm about to ask you that neither the government counsel at the hearing nor the IJ asked the petitioner about this inconsistency. Okay? What is the consequence under our circuit law of the failure to do that? Your Honor, this circuit states that the petitioner is to be provided an opportunity to explain. However, I would say vehemently that he constructively was when this was handed to him five months ago. And the statement is clear before him that this is what his father said. And he was aware of the fact that, of course, there was discrepancies within the same report of the Sarpanch's statement, that he responded to that but did not in this case. That is, of course, assuming whether he was asked about that, which I'm not exactly sure of. But that is the circuit law, Your Honor. That's correct, that he is to be given an opportunity to respond to such an inconsistency. And the failure to do so? I understand your argument that he was given an opportunity. But the consequence of failing to do that is what? Well, I guess it would have to be looked at the record as a whole, Your Honor, and whether or not the failure to ask would require a remand, I guess, to the court, or if the record demonstrates that he didn't have an opportunity to address that specific inconsistency in the record. I thought our law was pretty clear that an inconsistency, however glaring, if the petitioner is not given an opportunity at the hearing to address the inconsistency, it cannot be relied upon to establish adverse credibility. Am I off base? You're absolutely right, Your Honor.  But I don't believe that it requires a remand if there are, say, several other inconsistencies that were supported by the record. But you are right, Your Honor. Thank you. You're welcome. Furthermore, Your Honor, again, citing to Wang, that is a major inconsistency in this case, which Mr. Singh has not addressed. And the existence of that within this record lends substantial support, substantial evidence, therefore supports the Board's decision in this case. Would you comment on this kind of mix-up about the wife or the wives? Well, I'll say what the Board said, and it was improper for the immigration judge to rely on that in this case. Okay. And I don't think there's any dispute as to that, Your Honor. Okay. And if there are no further questions from the bench, government rests. Thank you. Thank you. Thank you. You have 40 seconds, counsel. Was your client asked about his father's statement? I don't believe he was actually at hearing, Your Honor, because I think what happened was the hearing kind of went off onto this marriage tangent. And that really took up, that ended up taking up the bulk of redirect, especially toward the last half of the last hearing. So I don't think he was actually confronted in the form of questioning with that statement. And as for the inconsistency Your Honor pointed out on the service report that he said no, no as far as mistreatment suffered by villagers at the hands of the police, I think that inconsistency with the rest of that statement itself, including the very previous question in which he replied that he himself had been  I think it underscores, it can underscore a number of things. Possibly a language barrier, possibly memory issues. But in any event, maybe just the competency of the father's responses to a lot of these questions. Well, the father says he was arrested by the police, but he was not harassed by police after his son left the United States in 1993, and he did not suffer physically or mentally from the police. I mean, there is a difference between being arrested and being beaten, I take it. I suppose so, Your Honor. But as you pointed out, that question 11 at page 398 of the record is extremely open. Has anyone from this village ever suffered in any capacity physically and or mentally by government officials and or police at any time, ever and at any time? And he said no. And this is immediately after. That's question number 11 on this questionnaire. Question number 10, his response is that he was arrested and that his son was. But his son has not suffered physically or mentally. He can draw that distinction. I think you're including a lack of intellectual capacity to the father, which is somewhat passionate. That's true, Your Honor. And I don't mean to call into question my client's father's intellectual capacity to that extent. But I think the fact that he got all these other dates wrong regarding relatively verifiable material does call into question whether he would distinguish between being arrested and his son being harassed by the police several times, four or five times arrested, and the suffering in any capacity from physically or mentally from the police at any time. And as to the number of arrests, three as opposed to four or five, I think another thing to be noted is that my client's testimony was that the police came to his apart from the three arrests was that the police came to his house prior to the first arrest and also that subsequent to his final arrest he was supposed to report to the police. And upon the first time he went to report to the police, which was approximately a week after his release, he was beaten again. So given the very nature of his interactions with the police, I think the four or five times is a fairly reasonable response. And given the number of years that elapsed between the incidents in question and the time that the father gave these responses, I think that accounts for the discrepancy in dates. Thank you, counsel. Thank you, Your Honor. Thank you, gentlemen.
judges: B .Fletcher, Hawkins, Bea